**In re NEISNER BROTHERS, INC., Debtor.**

**Bankruptcy No. 77 B 2836.**

United States Bankruptcy Court, S. D. New York.

Feb. 10, 1981.

Hale & Dorr, Boston, Mass., Sp. Counsel, for debtor.

Milbank, Tweed, Hadley & McCloy, New York City, for Alexander Freeman Trust.

Stroock & Stroock & Lavan (Krause, Hirsch & Gross, New York City), for debtor.

EDWARD J. RYAN, Bankruptcy Judge.

On December 1, 1977, Neisner Brothers, Inc. ("Neisner" or the "debtor") filed its petition in proceedings for an arrangement under Chapter XI of the Bankruptcy Act. Pursuant to orders entered by this court, after notice and hearings held on March 22, 1978, April 3, 1978 and April 6, 1978, respectively, the debtor, as tenant, rejected and disaffirmed three leases which are more fully described hereinafter. The first lease, dated December 4, 1928, was entered into by Alexander Freeman ("Freeman") and Harry E. Byron ("Byron"), as landlords, and the debtor, as tenant, for a term of 89 years commencing May 26, 1937, for certain premises located at 9644–9654 Joseph Campau Avenue, Hamtramck, Michigan (the "Campau Lease"). The second lease, dated December 22, 1928, was entered into by Freeman and Byron, as landlords, and the debtor, as tenant, for a term of 89 years commencing March 2, 1940, for the premises located at Nos. 7769–7807 West Vernor Highway, Detroit, Michigan (the "West Vernor Lease"). The third lease, dated December 27, 1928, was entered into by Freeman, as landlord, and the debtor, as tenant, for a term of 89 years commencing February 1, 1938, for those premises located at No. 8354 West Jefferson Avenue, Detroit, Michigan (The "West Jefferson Lease").

All three leases are similar in form and content. Each provided for an initial net rental reservation and then rental "step-ups" were scheduled at five-year intervals.[1]

In February of 1940, all three leases were modified pursuant to written modifications executed by Freeman and the Estate of Harry E. Byron, by Rose Byron, as landlords, and Neisner, as tenant. The modifications respectively referred as to the "Campau Modification", the "West Vernor Modification", and the "West Jefferson Modification", each provided for the elimination of the rent "step-ups". The rental provisions were substituted with provisions that required the debtor to pay as rent thereafter the amount originally reserved under the lease for the first five-year rental interval (the "base amount") or 6% of the debtor's gross receipts (the "gross receipts amount"), whichever should be the greater. In addition, each modification contained a clause (the "contested clause") providing for payment by the debtor, in one lump sum, of the total difference, if any, between the rent which would have been paid under the original "step-up" basis for computing rent and the total of rents paid under the "gross receipt" basis provided for in the modifications, in the event of a declaration of bankruptcy or a release from the lease through the agency of any court.[2]

---

1. Under the Campau Lease, the net reserved was $22,400 per year for the first five years of the term and $24,900 per year for the balance of the term.

Under the West Vernor Lease, the net rent reserved was $13,000 per year for the first five years, $14,000 per year for the second five years, $15,000 per year for the third five years, and $16,000 per year for the balance of the term.

The net rent reserved under the West Jefferson Lease was $19,800 per year for the first five years, $21,780 per year for the second five years, and $24,000 per year for the balance of the term.

2. "It is further agreed that if the tenant shall be declared a bankrupt, or through the agency of any court or governmental body of competent jurisdiction be relieved or released from the obligations of the said lease agreement, either partially or wholly, excepting in the event of condemnation under the power of eminent domain, all of the difference between the total of net rentals paid pursuant to this modification and the total of net rentals which would have been paid by tenant to the landlord under the above lease agreement as originally written, if this modification were not written, shall thereupon and in that event

Between May and November of 1978, the successors in interest to Freeman and Byron filed proofs of claim [3] in these proceedings for amounts allegedly owed by the debtor to the landlord(s) in connection with the debtor's respective rejections of the three leases. The debtor objected to the three claims.

The claimants contend that their respective claims are provable and allowable claims for "accrued" rent owing as a consequence of the operation of the contested clauses. The debtor subsequently objected to all three claims, alleging that the contested clause was not triggered and, if it were triggered, it would be unenforceable because it constitutes a penalty.

By order to show cause dated May 18, 1980, the matter of the claims and the debtor's objections thereto came on for hearing before this court. At that hearing, the parties agreed to work out a schedule for the submission of their respective memoranda, after which final submission this court was to determine whether any further argument would be required. It was the debtor's position that the matter could be decided on the papers and, that since there were no issues of fact, Neisner was entitled to summary judgment holding the contested clause unenforceable and expunging the three claims.

The motion for summary judgment expunging the claims is denied. Claims Nos. 2386, 2960 and 5008 are provable and allowable as a consequence of the operation of the contested clauses.

The debtor alleges that the contested clauses, upon which the three claims are based, have never become operative since the tenant was not "declared a bankrupt" or "relieved or released from its obligations through the agency of any court or governmental body of competent jurisdiction."

■ However, considering the time period during which the leases were executed,[4] it is at least arguable that in 1940, filing a petition in proceedings for an arrangement under Chapter XI was sufficient involvement in a bankruptcy proceeding to satisfy the intent of the parties who drafted the contested clause.

In any event, it is fatuous to argue that because the entry of the rejection orders constituted breaches of the respective leases,[5] the debtor was not relieved or released from its obligations under the respective leases. In fact, the contractual relations between the debtor and claimants ended upon entry of the rejection orders; the debtor was relieved of its future obligations under the leases, including its obligation to pay rent. The potential claims,[6] arising as

become immediately due and payable forthwith, in addition to all other obligations of the tenant as set forth in said original lease agreement.
"The West Vernor Modification also recited that 'all of the terms and conditions as set forth in [the West Vernor Lease], except as herein modified, shall remain unchanged and are hereby ratified and confirmed.' "

3. Proof of Claim No. 2386 was filed by the successors in interest to Freeman and Byron on or about May 17, 1978, for $83,250.00—amounts allegedly owed by the debtor in connection with the West Vernor lease and the debtor's rejection thereof.
Proof of Claim No. 2960 was filed by the landlords on or about July 18, 1978 for $88,749.98—amounts allegedly owed by the debtor in connection with the Campau lease and the debtor's rejection thereof.
On or about November 9, 1978, the successors in interest to Freeman filed Claim No. 5008, for $138,500.00—amounts allegedly owed

by the debtor in connection with the West Jefferson lease and its rejection by the debtor.

4. The Chandler Act, enacted in 1938, substantially revised the Bankruptcy Act of 1898. The provisions and terms of the Chandler Act were new to the persons who drafted and modified the respective leases.

5. Bankruptcy Act § 63(c) provides:
"Notwithstanding any State law to the contrary, the rejection of an executory contract or unexpired lease, as provided in this Act, shall constitute a breach of such contract or lease as of the date of the filing of the petition initiating a proceeding under this Act."

6. Bankruptcy Act, Section 353, provides, in pertinent part:
"... The claim of the landlord for injury resulting from the rejection of an unexpired lease of real estate ... shall be provable, but shall be limited to an amount not to exceed the

a result of any injuries caused by the debtor's rejections (viz. breaches), are separate claims that in no way affect the claims which arise by operation of the contested clauses.[7] Since the debtor was involved in bankruptcy proceedings and since the debtor was relieved of its future obligations under the respective leases, the contested clauses, triggering the claims, all became operative.

■ It is next alleged by the debtor that the contested claims are not allowable because the contested clause provision upon which they are each based is an unenforceable penalty. The debtor has failed, in the first instance, to recognize that the sums in controversy do not represent accelerated future rents or liquidated damages, both of which would constitute unallowable claims.[8] Rather, the amounts in controversy consist of unpaid accrued rents which the landlords had forborne from collecting as conditional rental concessions. The quid pro quo for the concessions was that Neisner remain in possession of the respective premises and meet its obligations for the full term of the respective leases. Since Neisner breached the conditions, the unpaid accrued rents became due and owing. However, even if the amounts in controversy do not represent conditional forbearances by the landlords, the clause providing for the payment of accrued rents to the landlords does not constitute a penalty. The leases and modifications were freely negotiated contractual arrangements consistent with the economic probabilities of the times.[9] Freely negotiated provisions do not constitute unenforceable "demands for blood."[10] The practical effect of the operation of the clauses is not so unconscionable as to constitute a penalty.[11] Therefore, the contested provision is not unenforceable as a penalty.

■ The debtor further contends that the contested claims are not allowable because the contested clause provisions upon which they are based constitute attempts to obtain impermissible preferential treatment

rent, without acceleration, reserved by such lease for the three years next succeeding the date of the surrender of the premises to the landlord or the date of reentry of the landlord, whichever first occurs, whether before or after the filing of the petition, plus unpaid accrued rent, without acceleration, up to the date of surrender or reentry; . . ."

7. Claims Nos. 2386, 2960 and 5008 each set forth both a general claim and a priority claim. The priority claim portion of each of the claims is for post-petition rent. The general claim portion arises by operation of the contested clause.

8. See, Bankruptcy Act § 353, 11 U.S.C. § 753; *Kothe v. R. C. Taylor Trust*, 280 U.S. 224, 50 S.Ct. 142, 74 L.Ed. 382 (1930).

9. Contrary to the debtor's assertion in its Reply Memorandum p. 2, that there is no evidence to indicate that the modifications were drafted at the request of the tenant due to its state of financial distress and that "generally, in fact, this country began emerging from a depession [sic] in the late 1930's and, by 1940, the economy was well on its way to recovery", this court takes judicial notice of the fact that in 1938 there were still ten million people unemployed and, but for our involvement in World War II, there was no end in sight for the staggering depression. *See*, Alistair Cooke's *America*, published by Alfred A. Knopf, New York (1973). Thus, at the time the parties modified the leases the economic probabilities were that Neisner was in the same financial distress as the rest of the country.

10. *See, In re D. H. Overmyer Co., Inc.*, 510 F.2d 329 (2d Cir. 1975), citing *Weaver v. Hutson*, 459 F.2d 741 (4th Cir. 1972), cert. denied, 409 U.S. 957, 93 S.Ct. 288, 34 L.Ed.2d 227 (1973).

11. On page 9 of its Memorandum, the debtor outlines the difference between the amount paid as rent under the leases as modified, and the amount which would have been payable under the original leases' step-up bases. With the exception of Claim No. 5008 (the West Jefferson Lease), where the debtor's and landlords' figures reveal a $4,000 discrepancy, the parties are in agreement concerning the amounts allegedly due and owing. The total amount, approximately $300,000, considered in relation to the total amount paid under the modified lease, cannot be considered as "bleeding" the debtor-tenant or as constituting a penalty.

In response to the debtor's allegation that the effect of the contested clause is to create an inversely proportional amount due, the claimants note that their respective claims are, in fact, proportional because the longer that the debtor took advantage of the modifications' concessions, the larger were the amounts forborne by the landlords.

for the claimants. A preference consists of a transfer on account of an antecedent debt within the four months next preceding the filing by or against an insolvent debtor, of the petition initiating the proceedings under this Act.[12] The accrued rent claims are not preferences within the meaning of the Act. Furthermore, no case has been cited by the debtor in support of its bald assertion that something which is not a preference should be treated as one. The contested clause is not, and will not be treated as, a voidable preferential transfer.

■ The debtor's contention that the contested clause is unenforceable as against public policy because it attempts to frustrate the intent of Congress, as expressed in the provisions of the Bankruptcy Act, to limit allowable landlord damages, contradicts the debtor's earlier assertions and further begs the question concerning the determination of damages. On the one hand, the debtor alleges that it was not relieved or released from its obligations under the lease through the agency of any court, specifically by operation of Section 63(c) of the Bankruptcy Act; then, on the other hand, the debtor alleges that that very Section 63(c) limits the claimant's damages. Furthermore, the debtor misses the point that the limitation of damages under Section 63(c) is independent of the claims which are triggered by the contested clause.

The debtor's final contention, asserted in its reply memorandum, suggests that the debtor might be entitled to an accounting for surplus amounts paid to the landlords during the past forty years. This position is in direct conflict with the debtor's figures as set out on page 9 of its original memorandum. In any event, since there is a discrepancy between claimants' and debtor's figures concerning Claim No. 5008, the parties are directed to settle an order which, inter alia, provides for a hearing to determine the amount due on Claim No. 5008.

The debtor's objections to Claims Nos. 2385, 2960 and 5008 are denied in their entirety. Settle an appropriate order.

12. Bankruptcy Act § 60, 11 U.S.C. § 96; *In re Texlon Corp.*, 596 F.2d 1092 (2d Cir. 1972).